IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania Corporation, and PNC BANK, N.A., a National Banking Association and Pennsylvania Resident,<br><br>Plaintiffs,<br><br>v.<br><br>EILEEN DALY, an Adult Individual and Florida Resident, and MORGAN STANLEY, INC., a Delaware Corporation<br><br>Defendants. | Civil Action No. _____ |

## COMPLAINT

AND NOW come Plaintiffs, The PNC Financial Services Group, Inc. ("PNC Financial") and PNC Bank, National Association ("PNC Bank") (together "PNC"), by their undersigned counsel, and file the following Verified Complaint against Defendants Eileen Daly ("Daly") and Morgan Stanley, Inc. ("Morgan Stanley"). In support thereof, PNC states as follows:

### I.     INTRODUCTION

1. This case arises out of Daly's surreptitious conspiracy with other Morgan Stanley employees to breach her contractual obligations owed to PNC, misappropriate PNC's confidential information and trade secrets, unlawfully solicit PNC's customers and unfairly compete with PNC through Morgan Stanley.

2. Prior to her resignation from PNC on January 31, 2014, Daly was employed as a Senior Vice President with PNC's office in Palm Beach, Florida. In this position, Daly was responsible for providing trust advisory services for a number of PNC's most valuable customers, including one of its largest customers in the State of Florida.

3. During her employment with PNC, Daly received significant consideration in the form of employment, salary, stock, and other benefits in exchange for her promise to honor her contracts with PNC, be loyal and trustworthy to PNC, and promote the business of PNC.

4. In utter disregard of her contractual and fiduciary obligations, Daly facilitated and provided critical assistance to an unlawful scheme conceived by Daly and three other former PNC employees (collectively, the "Former Employees") to solicit PNC employees to resign from PNC and join Morgan Stanley, misappropriate PNC's confidential and proprietary business information and trade secrets, and divert PNC's valuable business relationships and goodwill for the benefit of their new employer Morgan Stanley.

5. At all material times, Morgan Stanley is and has been a direct competitor of PNC in the asset management and investment advisory industry.  With full knowledge of Daly's contractual and fiduciary obligations to PNC, Morgan Stanley knowingly provided substantial aid and assistance to Daly's and the other Former Employees' efforts to misappropriate PNC's confidential and proprietary information and unlawfully solicit and divert PNC's employees and customers.

6. Defendants' unlawful conduct occurred during Daly's employment with PNC and has continued, without abatement, since Daly's resignation.

7. As a result of Defendants' unlawful conduct, PNC has suffered, and will continue to suffer, millions of dollars in damages, as well as the loss of customer relationships, customer goodwill, and confidential business information.

## II.   JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.      Venue over this action is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Daly stipulated in written agreements that all disputes or claims relating to the subject matter complained of herein shall be brought exclusively in this judicial district, and expressly waived any right to challenge jurisdiction or venue in this judicial district.

10.     Morgan Stanley is registered to do business in, and has continuous and systematic contacts with, Pennsylvania, and therefore is subject to personal jurisdiction in this judicial district.

## III.   THE PARTIES

**A.     Plaintiffs**

11.     PNC Financial is a Pennsylvania corporation with its headquarters in Pittsburgh, Pennsylvania. PNC Financial is a party to two separate Restricted Stock Award Agreements (collectively, the "Agreements") with Daly. The matters complained of herein arise, in part, from Daly's material breaches of these Agreements.

12.     PNC Bank is a national banking association with a principal place of business in Pittsburgh, Pennsylvania. PNC Bank employed Daly and three other individuals who, on behalf of and as agents for Morgan Stanley, misappropriated PNC's confidential and proprietary information, and wrongfully utilized that information to unlawfully solicit PNC's customers and compete with PNC.

13. At all material times hereto, PNC Financial and PNC Bank maintained an address of 1 PNC Plaza, 249 5th Avenue, Pittsburgh, Pennsylvania 15222-2707.

14. Through its Palm Beach, Florida office, PNC Bank provides comprehensive wealth management, fiduciary, trust and private banking services to individual and institutional customers.

B. **Defendant Eileen Daly**

15. Daly is an adult individual and resident of North Palm Beach, Florida, with a residential mailing address of 101 Easterly Road, North Palm Beach, Florida 33408.

16. Prior to her resignation, Daly was employed by PNC as a Senior Vice President in PNC's Palm Beach, Florida office. As a Senior Vice President, Daly had significant responsibility for a number of PNC's most valuable customers, including one of PNC's largest customers in the State of Florida.

C. **Defendant Morgan Stanley**

17. Defendant Morgan Stanley is a Delaware corporation with its principal place of business located at 1585 Broadway, New York, New York 10036.

18. Like PNC, Morgan Stanley provides, *inter alia*, investment management, risk management, financial planning, and trust, estate, and legacy planning services for individual and institutional customers, and is a direct competitor of PNC in the Florida market and throughout the United States.

### IV.   FACTUAL BACKGROUND

A. **Daly's Restricted Stock Award Agreements.**

19. Daly accepted employment with National City Bank ("National City") in late 2007, and became employed by PNC when National City merged with PNC in 2009. On

January 25, 2010, and again on February 9, 2011, Daly and PNC entered into the Agreements[1]

with PNC Financial, pursuant to which Daly received restricted stock awards totaling 240 shares

of PNC stock pursuant to the terms of PNC's long-term incentive plan.

20. As consideration for these awards, Daly promised in the Agreements not to solicit

or do business with current or former PNC customers or employees, as follows:

> **14.2   Non-Solicitation; No-Hire**. [Daly] agrees to comply with the provisions of subsections (a) and (b) of this Section 14.2 while employed by the Corporation and for a period of one year after [Daly's] Termination Date regardless of the reason for such termination of employment.
>
> (a)   Non-Solicitation. [Daly] shall not, directly or indirectly, either for [Daly's] own benefit or for the benefit or purpose of any Person other than PNC or any of its subsidiaries, solicit, call on, do business with, or actively interfere with PNC's or any subsidiary's relationship with, or attempt to divert or entice away, any Person which [Daly] should reasonably know (i) is a customer of PNC or any subsidiary for which PNC or any subsidiary provides any services as of the Termination Date, or (ii) was a customer of PNC or any subsidiary for which PNC or any subsidiary provided any services at any time during the twelve (12) months preceding the Termination Date, or (iii) was, as of the Termination Date, considering retention of PNC or any subsidiary to provide any services.
>
> (b)   No-Hire. [Daly] shall not, directly or indirectly, either for [Daly's] own benefit or purpose or for the benefit or purpose of any Person other than PNC or any of its subsidiaries, employ or offer to employ, call on, or actively interfere with PNC's or any subsidiary's relationship with, or attempt to divert or entice away, any employee of PNC or any of its subsidiaries, nor shall [Daly] assist any other Person in such activities.

(Agreements, § 14.2).

21. Pursuant to the Agreements, Daly further agreed as follows:

---

[1] True and correct copies of the Agreements are attached hereto as Exhibits A and B, respectively.

> **14.3** <u>Confidentiality</u>. During [Daly's] employment with the corporation, and thereafter regardless of the reason for termination of such employment, [Daly] will not disclose or use in any way any confidential business or technical information or trade secret acquired in the course of such employment, all of which is the exclusive and valuable property of [PNC] whether or not conceived of or prepared by [Daly], other than (a) information generally known in [PNC's] industry or acquired from public sources, (b) as required in the course of employment by [PNC], (c) as required by any court, supervisory authority, administrative agency or applicable law, or (d) with the prior written consent of PNC.

(*Id.* at § 14.3).

22. Each Agreement also reflects Daly's agreement to resolve all claims relating to the Agreements or the breach thereof in this Court or the Court of Common Pleas of Allegheny County, Pennsylvania:

> **15.1** <u>Governing Law and Jurisdiction</u>. This Agreement is governed by and construed under the laws of the Commonwealth of Pennsylvania, without reference to its conflict of laws provisions. Any dispute or claim arising out of or relating to the Agreement or claim or breach hereof shall be brought exclusively in the federal court for the Western District of Pennsylvania or in the Court of Common Pleas of Allegheny County, Pennsylvania. By execution of the Agreement, [Daly] and PNC hereby consent to the exclusive jurisdiction of such courts, and waive any right to challenge jurisdiction or venue in such courts with regard to any suit, action, or proceeding under or in connection with the Agreement.

(*Id.* at § 15.1).

23. In accordance with Section 14.2(a) of the Agreements, Daly promised to abide by the non-solicitation/no-hire provisions of the Agreements for a period of twelve (12) months following her resignation from PNC. However, pursuant to Section 15.3 of the Agreements, if PNC is required to seek Daly's compliance with Section 14.2 of the Agreements by legal

proceedings, this twelve (12) month period will be extended "for a period of twelve (12) months from the date [PNC] institutes legal proceedings for injunctive or other relief." (*Id.* at § 14.2).

24. Daly also explicitly agreed that she "received adequate consideration with respect to the enforcement of Sections 14 and 15" of the Agreements, that such provisions "are reasonable and properly required for the adequate protection of the business of PNC," and that enforcement of such provisions "will not prevent [Daly] from earning a living." (*Id.* at § 14.1).

B. **PNC's Code of Business Conduct and Ethics.**

25. Daly also expressly acknowledged and agreed to comply with PNC's Code of Business Conduct and Ethics ("Code").[2]

26. Specifically, as set forth in detail in this Code, Daly agreed, *inter* alia, not to disclose PNC's proprietary and confidential information (which includes business information, employee information, records, activities, plans, and the solicitation of customers and prospective customers) outside of PNC, and not to use confidential information for personal financial gain or to compete with PNC.

C. **Defendants' Conspiracy to Unfairly Compete With PNC.**

27. PNC has recently uncovered evidence establishing that Defendants have been and are engaged in a conspiracy to breach and interfere with Daly's contractual obligations to PNC; unlawfully and unfairly compete with PNC; solicit and divert PNC's customers; solicit and divert PNC's employees; disparage and misrepresent PNC to PNC's current and former customers; and misappropriate PNC's valuable and confidential business information and goodwill.

---

[2] A true and correct copy of relevant excerpts of PNC's Code is attached hereto as Exhibit C.

28. This conduct, which PNC believes began in late 2013, was carefully planned and implemented while Daly was still employed by, and receiving significant compensation from, PNC.

29. This conduct has continued unabated since Daly's employment with PNC ended on January 31, 2014, and Daly and the other Former Employees accepted employment with PNC's competitor, Morgan Stanley.

D. **Defendants' Covert Conspiracy to Wrongfully Solicit and Divert PNC Employees to Morgan Stanley.**

30. Upon information and belief, in late 2013, Daly began conspiring with the three other Former Employees -- Daniel Payne ("Payne"), Kimberly Pickering ("Pickering"), and Russell O'Brien ("O'Brien") -- to resign from PNC *en masse*, misappropriate PNC's confidential information and divert PNC customers to Morgan Stanley.

31. Because of her relationship with one of PNC's largest customers in the Florida market – and more specifically, because of the significant fees that Morgan Stanley could earn by managing that customer's accounts – PNC believes and therefore avers that Daly served as the linchpin of these plans.

32. Specifically, PNC believes and therefore avers that Daly, with the coordination and assistance of the other Former Employees, undertook systematic efforts to interfere with each other's employment relationship with PNC and divert and entice each other to resign from PNC and accept employment with its competitor Morgan Stanley.

33. These activities all occurred while Daly was in PNC's employ, and were undertaken in direct violation of her contractual, fiduciary, and common law duties to PNC.

34.     PNC further believes and avers that, with full knowledge of Daly's contractual, fiduciary, and common law duties to PNC, Morgan Stanley affirmatively assisted Daly's efforts to interfere with these former PNC employees' employment relationships with PNC and divert and entice these employees to resign from PNC and accept employment with Morgan Stanley.

35.     On the afternoon of January 31, 2014, Defendants' coordinated efforts to solicit, call on, interfere with and attempt to entice away Daly and the other Former Employees was set in motion.  On that date, Daly and the other Former Employees resigned from PNC.

E.     **Defendants' Misappropriation and Unlawful Use of PNC's Confidential Information.**

36.     PNC has attained, and can only maintain, its present position in the investment advisory and wealth management industry by preserving the confidentiality of its proprietary business information and trade secrets, including but not limited to its business plans and strategies, customer contact information, and other customer account information.  This information constitutes protectable, confidential information of PNC.

37.     PNC has undertaken significant measures to protect and maintain the confidential nature of its business and customer information.  In addition to certain physical and electronic security measures undertaken by PNC, for many years PNC has arranged for key employees to execute agreements requiring these employees to maintain as confidential and not disclose such information outside of PNC.  Indeed, Daly executed the Agreements, whereby she promised not to disclose or use any confidential business or technical information or trade secrets acquired during the course of her employment with PNC, except on behalf of PNC.

38.     PNC's Code also identifies the obligations of PNC employees respecting the use, disclosure, and safeguarding of PNC's private and confidential information.  Daly and the other

Former Employees signed acknowledgments that memorialize their agreement to adhere to these obligations.

39. Notwithstanding these significant protective measures undertaken by PNC, Daly and the other Former Employees misappropriated PNC's confidential customer information in an effort to unlawfully compete with PNC through their new employer, Morgan Stanley.

40. By way of illustration, several days prior to her resignation, Daly accessed her business computer at PNC and attempted to download confidential information concerning PNC's customers, including confidential customer lists. However, PNC has certain security measures in place to restrict such unlawful access, and understands that these measures prevented Daly from completing this download.

41. Not to be deterred, on January 31, 2014, mere hours before her resignation from PNC, Daly was observed taking photographs of her computer screen with her mobile phone.

42. Daly also maintained approximately 10 boxes of customer files in her office at PNC. PNC has been unable to locate these files following Daly's resignation, and believes that Daly removed these files and is utilizing them to compete with PNC through Morgan Stanley.

43. Daly was not the only former PNC employee involved in the misappropriation of PNC's confidential information. Four (4) days prior to his resignation, Payne also downloaded certain PNC confidential information and customer lists, which PNC believes have been utilized to compete with PNC through Morgan Stanley.

44. Payne also maintained numerous "hard-copy" customer files in his office at PNC. PNC likewise has been unable to locate these files following Payne's resignation, and believes that Payne removed these files to pursue business on behalf of Morgan Stanley.

45. Furthermore, immediately following Daly's resignation from PNC and continuing through the present date, Daly and other Morgan Stanley employees have contacted numerous PNC customers utilizing contact information only available by accessing PNC's confidential information, including without limitation these customers' personal, private mobile telephone numbers.

46. In pursuing their coordinated efforts to misappropriate PNC's confidential information and use such information to solicit and divert PNC's customers, Daly and the other Former Employees were acting on behalf of, and to further the business of, Morgan Stanley.

F.  **Daly's Solicitation of and Work for PNC Customers.**

47. In her Agreements with PNC, Daly promised that, for a period of one (1) year following the termination of her employment with PNC, she would not "solicit, call on, do business with, or actively interfere with PNC's or any subsidiary's relationship with, or attempt to divert or entice away" any PNC customer. (Agreements, § 14.2).

48. Notwithstanding the clear prohibitions set forth in Section 14.2 of the Agreements, Daly has materially breached, and continues to materially breach, the Agreements by soliciting, calling on, doing business with and seeking to divert and entice away PNC customers to her new employer, Morgan Stanley. To date, Daly has succeeded in wrongfully transferring almost $250 million of customer assets, representing more than $1 million in annual fees for PNC, to Morgan Stanley.

49. Daly's wrongful diversion of, and work for, PNC customers has at all material times been coordinated with, and promoted and supported by, the other Former Employees and their new employer Morgan Stanley.

50.     Indeed, since their resignations from PNC, these Former Employees have engaged in a concerted campaign on behalf of Morgan Stanley to solicit and induce a large number of PNC customers to transfer their business to Morgan Stanley, including entities and individuals that were customers of PNC many years before these Former Employees joined PNC.

51.     These solicitation efforts aimed at long-standing PNC customers aptly illustrate Defendants' misappropriation of PNC's confidential information, as such solicitations could not be undertaken without such information.

### G.     Defendants' Commercial Disparagement of PNC.

52.     In connection with their unlawful solicitation of PNC customers, Defendants have engaged, and continue to engage, in an improper campaign of commercial disparagement against PNC.

53.     By way of illustration, PNC understands that Daly and Morgan Stanley have utilized highly confidential and proprietary information of PNC to make misrepresentations and disparaging statements to current PNC customers regarding, *inter alia*, PNC's fee structures and internal strategies, all for the purposes of disparaging PNC and inducing those customers to move their business to Morgan Stanley.

54.     To-date, PNC has lost at least fifteen (15) accounts as a direct result of Defendants' unlawful solicitation efforts. The departure of these customers has resulted in the loss of hundreds of millions of dollars in total assets managed by PNC's Palm Beach office, the loss of very substantial fees, and damage to PNC's business reputation and goodwill.

55.     At all material times, Defendants' orchestrated plans to breach and tortiously interfere with the Agreements, misappropriate PNC's confidential and proprietary information,

wrongfully solicit PNC's customers, commercially disparage PNC and unfairly compete with PNC were undertaken on behalf of, and to further the business of, Morgan Stanley.

## V.     CAUSES OF ACTION

### COUNT I
### Breach of Fiduciary and Common Law Duties Owed to PNC
### (PNC v. Daly)

56.     The averments of the preceding paragraphs are incorporated herein as if fully set forth.

57.     While employed at PNC, Daly held a position of trust and confidence and owed duties of loyalty, good faith and fair dealing to PNC both during and after her employment.

58.     By engaging in the conduct described above, Daly has breached the fiduciary and common law duties she owed to PNC by intentionally failing to act in good faith and solely for the benefit of PNC in matters for which she was employed.

59.     Daly's conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

### COUNT II
### Breach of Contract
### (PNC v. Daly)

60.     The averments of the preceding paragraphs are incorporated herein as if fully set forth.

61.     Daly knowingly, and for valid consideration, entered into the Agreements.

62.     By engaging in the conduct described above, Daly has and continues to breach the Agreements, including but not limited to her promises that (a) for a period of one (1) year following the termination of her employment with PNC, she would not solicit, call on, do business with, or actively interfere with PNC's or any subsidiary's relationship with, or attempt

to divert or entice away any PNC customer, (b) for a period of one (1) year following the termination of her employment with PNC, she would not employ or offer to employ, call on, or actively interfere with PNC's relationship with, or attempt to divert or entice away, any employee of PNC or any of its subsidiaries, or assist any other person or entity in such activities, and (c) she would not disclose or use in any way any confidential information of PNC.

63. By engaging in the conduct described above, Daly has and continues to breach the terms of the Agreements.

64. Defendants' conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## COUNT III
### Tortious Interference with Existing and Prospective Contractual Relations
### (PNC v. Morgan Stanley)

65. The averments of the preceding paragraphs are incorporated herein as if fully set forth.

66. Morgan Stanley, through its employees Daly, O'Brien, Payne and/or Pickering, and with knowledge of Daly's contractual, fiduciary, and common law obligations to PNC, and PNC's existing and prospective contractual relationship with its employees and customers, has interfered with and/or induced the breach of such obligations.

67. Morgan Stanley's conduct in interfering with these existing and prospective contractual relations was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## COUNT IV
### Misappropriation of Trade Secrets
### (PNC v. Defendants)

68. The averments of the preceding paragraphs are incorporated herein as if fully set forth.

69. The proprietary trade secret information of PNC known to Defendants is of great economic value and not readily ascertainable by proper means.

70. PNC has made reasonable efforts to protect the confidentiality of such information.

71. Daly and the Former Employees knew or should have known that they have an obligation to maintain the secrecy of such information and use it only for the benefit of PNC.

72. Defendants, by engaging in the conduct set forth above, have misappropriated, and threaten to misappropriate, PNC's trade secrets and confidential and proprietary information in violation of the Agreements, the Pennsylvania Uniform Trade Secrets Act, Pa. C.S. § 5301 et seq., the Florida Uniform Trade Secrets Act, § 688.001 et seq., and common law.  Moreover, Defendants have disclosed this trade secret information, and the continued disclosure of this trade secret information is inevitable as a result of Defendants' actions and plans.

73. PNC is therefore entitled to recover both the actual loss caused by the misappropriation, the unjust enrichment caused by the misappropriation, and attorneys' fees.

74. Defendants' conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## COUNT V
## Conversion of Corporate Assets
## (PNC v. Defendants)

75. The averments of the preceding paragraphs are incorporated herein as if fully set forth.

76. Defendants, by engaging in the conduct described above, knowingly and intentionally exerted unauthorized control over PNC's property, personnel, resources, assets, confidential information and trade secrets.

77. Defendants' conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## COUNT VI
## Commercial Disparagement/Defamation
## (PNC v. Defendants)

78. The averments of the preceding paragraphs are incorporated herein as if fully set forth.

79. Defendants, in the course of engaging in the conduct described above, made false statements regarding PNC, PNC's Palm Beach, Florida office, the services that PNC provides and the consideration received therefor.

80. Defendants' statements were made with knowledge of their falsity, and/or with reckless disregard as to their truth or falsity.

81. Defendants' conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## COUNT VII
## Unfair Competition
## (PNC v. Defendants)

82. The averments of the preceding paragraphs are incorporated herein as if fully set forth.

83. PNC competes with Defendants for a common pool of customers.

84. Defendants, by engaging in the conduct described above, including breaching the contractual and common law and fiduciary duties of loyalty, good faith and fair dealing owed by Daly to PNC; misappropriating, disclosing and misusing trade secrets and confidential information of PNC; and interfering by improper means with PNC's relationships with its employees and customers, which acts are inextricably intertwined, have engaged in unfair competition with PNC.

85. Defendants' conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## COUNT VIII
## Civil Conspiracy
## (PNC v. Defendants)

86. The averments of the preceding paragraphs are incorporated herein as if fully set forth.

87. Defendants, by engaging in the conduct described above, have agreed and conspired to commit the unlawful acts against PNC, and/or engage in competition with PNC by unlawful means, with an intent to injure PNC, and has and will continue to take acts in furtherance of the conspiracy.

88. Defendants' conduct was and is willful, intentional and unprivileged, and has caused PNC to suffer substantial monetary damages.

## VI.  DEMAND

WHEREFORE, Plaintiffs respectfully request:

1. Defendants, and anyone acting in concert or participation with Defendants, including any agent, employee, officer or representative of Defendant Morgan Stanley, be further ordered to return to PNC any and all property of PNC that is in Defendants' possession, including the confidential information and trade secrets set forth above, whether in original, copied, computerized, handwritten, or any other reproduced form;

2. An accounting of all corporate opportunities usurped and diverted by Defendants as a result of the unlawful and breaching conduct identified herein;

3. The imposition of a constructive trust for the benefit of PNC over all profits, advantages and payments received by Defendants by virtue of their wrongful acts;

4. An order requiring Defendants to assign to PNC their right, title and interest in any corporate opportunities developed, planned, or implemented while Defendant Daly and Payne, Pickering, and O'Brien were employed by PNC, and a declaration that all rights, title and interest in the usurped corporate opportunities belong to PNC;

5. Compensatory damages, including business costs and resulting business losses against Defendants, jointly and severally, in an amount to be determined by the evidence presented at trial;

6. The salary, benefits and other compensation paid by PNC to Daly during the period of her disloyalty;

7. Defendants' profits, jointly and severally, both past and future, gained as a result of their wrongful acts;

8. An award of punitive damages in an amount to be determined by the evidence presented at trial;

9. An award of attorneys' fees, costs and expenses expended herein pursuant to the Uniform Trade Secrets Act, which has been adopted in both Pennsylvania and Florida; and

10. Any and all other relief to which PNC is entitled.

Respectfully submitted,

By: */s/ Jordan M. Webster*
Matthew F. Burger, Esquire
Pa. I.D. No. 74513
matthew.burger@bipc.com
Jordan M. Webster, Esquire
Pa. I.D. No. 200715
jordan.webster@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219
(412) 562-8800

*Counsel for Plaintiffs,*
*PNC Financial Services Group, Inc. and*
*PNC Bank, N.A.*